IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Lester Dobbey, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case no. 1:21-cv-03762 |
| ) | |
| v. ) | The Honorable Andrea R. Wood |
| ) | |
| Xavier L. Taylor, *et al.* ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Defendant Xavier Taylor, by and through his attorney Kwame Raoul, Attorney General of Illinois, hereby responds in opposition to Plaintiff's Motion for Leave to File Amended Complaint [133], and in support of such opposition he states:

**Introduction**

1. Plaintiff asks the Court to allow him to amend his complaint 3 years after he filed his original complaint, and 5 years after the events occurred that are the subject of the case. His motion should be denied for four principal reasons: (1) the proposed amendment facially violates the statute of limitations for the new defendants; (2) the motion is untimely due to undue delay, which would prejudice the defendants and waste judicial resources; (3) the new claims lack any plausible factual basis under Rule 8's pleading standards; and (4) the requested injunctive relief is moot under Article III of the U.S. Constitution, as Plaintiff is no longer housed at the facility where the alleged events occurred. For these reasons, as detailed below, the Court should deny Plaintiff's Motion for Leave to Amend.

2. As this Court stated in its order of August 18, 2023, "[t]he facts of this lawsuit are uncomplicated." (ECF No. 94.) This characterization by the Court underscored the straightforward nature of the original complaint. The proposed amended complaint, however,

1

would introduce additional claims, new defendants, and expanded theories of liability. This expansion stands in stark contrast to the Court's initial assessment of the case and threatens to unnecessarily complicate what is at heart a straightforward matter. The Court's description of the lawsuit as uncomplicated suggests that the additional elements Plaintiff now seeks to introduce are superfluous and potentially disruptive to the efficient resolution of the core issues already before the Court.

## Factual Background

3. On May 28, 2019, Plaintiff, then housed within Stateville Correctional Center, filed an emergency grievance to the warden complaining that IDOC staff were retaliating against Plaintiff for unspecified reasons. (Exhibit 1, Grievance and IDOC Response.) Specifically, Plaintiff, filed a grievance concerning multiple issues, primarily focusing on problems with his cell conditions. In this grievance, Plaintiff reported that the water pressure in his cell (B216) was excessively high, disrupting his sleep, and that the water often appeared brown or yellowish. He claimed this issue had persisted since at least May 10, 2019.

4. Additionally, Plaintiff expressed concerns about mail handling delays and potential staff retaliation. (*Id.* at 1-2.) Plaintiff mentioned in his May 2019 emergency grievance that on April 21, 2019 and thereafter, he believed that Internal Affairs had retaliated against him. He also expressed concern about potential future retaliation. Plaintiff did not provide specific details about the nature of the alleged retaliation, who retaliated against Plaintiff, or why he came to the conclusion that the only reasonable conclusion was that Internal Affairs staff desired to harm Plaintiff by tearing two mailpieces and delaying repair of a plumbing issue. Plaintiff's only specificity in this regard was that unnamed staff were "maliciously and wantonly" violating Administrative Directive 05.08.105, a directive

2

that concerns "Renunciation of Affiliation with Security Threat Groups." (Exhibit 2 at 9, Table of Contents of IDOC Directives.)

5. On June 5, 2019, a designee of Sherwin Miles determined that the grievance did not constitute an emergency because, under the form's definition of an emergency, it was not a "substantial risk of imminent personal injury or other serious or irreparable harm to self." (Ex. 1 at 1.)[1] Plaintiff contends that this designee was Darwin Williams, an assistant warden at Stateville. (Pl.'s Mot. to Am. Compl., ECF No. 133 at 2.)

6. On June 16, 2019, at 3:25 p.m., Sherwin Miles, in her capacity as Acting Warden of Stateville Correctional Center, sent an email to Richard Graves, stating "Please review the above offender for transfer. I received information stating this offender is fearful for his safety, [Casework Supervisor] CWS please speak with this offender regarding this matter and document in CHAMPS. Thank you." (Exhibit 4 at 1.)

7. On June 17, 2019, at approximately 9:30 a.m., Plaintiff spoke to Casework Supervisor Richard Graves, alleging in his Complaint that he expressed concerns about Defendant Taylor being a member of a Security Threat Group (STG) and spreading information about Plaintiff renouncing his STG affiliations, potentially labeling him a "snitch." (Compl. ¶ 9, ECF No. 1.)

8. However, the incident report written by Graves on the same day, which was later produced to Plaintiff and the Court, did not mention Defendant Taylor. Instead, it detailed Plaintiff's request for a transfer due to safety concerns stemming from his renunciation of gang affiliation and fears that this information had been relayed to gang members within the facility, with some correctional staff allegedly involved with different gangs. (Exhibit 5,

---

[1] A warden's or his designee's determination that a grievance is not an emergency does not mean the grievance lacks merit. It only means that the grievance's review is not expedited. 20 Ill. Admin. Code. 504.840(c) (eff. Apr. 1, 2017) (reproduced at Exhibit 3.)

Incident Report of June 18, 2019) (redacted form; unredacted form is in Court's possession *in camera*).

9. At 12:01 p.m. on June 17, 2019, Graves spoke to Plaintiff to ask if Plaintiff wanted to be housed in protective custody. Plaintiff declined. (Exhibit 6, Incident Report.) Richard Graves documented these interactions in Plaintiff's Cumulative Counseling Summary record, also known as "CHAMPS." (Exhibit 7 at 2, CHAMPS of June 17, 2019.)

10. At 9:35 a.m. on June 18, 2019, Richard Graves sent an email to Plaintiff's clinical counselor, Davida Dixon, stating that she should initiate an administrative transfer of Plaintiff to another facility. (Exhibit 8, Email from Graves to Dixon.) According to Plaintiff's CHAMPS record, Dixon did so that day. (Ex. 7.)

11. Prior to 12:15 on June 18, 2019, Deputy Commander Michael Magana directed Defendant Taylor to interview Plaintiff about the content of Richard Graves's incident report. (Def. Taylor's Am. Ans. to Pl.'s Interrogs. ¶¶ 4-5, Sept. 13, 2022, ECF No. 46, at 15-20) (attached as exhibit to Plaintiff's Second Motion to Compel.)

12. At approximately 12:15 p.m. on June 18, 2019, Defendant Taylor interviewed Plaintiff, but Plaintiff did not provide any actionable information. (Exhibit 9, Interview Sheet.) According to Plaintiff's initial complaint, Defendant Taylor asked Plaintiff if he had spoken to a caseworker (Graves) the day prior and whether Dobbey had filed any grievances. Plaintiff stated that while he had filed a grievance, he had not written any letter to Graves. Plaintiff states he repeatedly expressed confusion over Defendant Taylor's questions, particularly when Taylor referenced statements made by "higher-ups" and asked about Graves' written report, which Plaintiff stated he had never read or seen. Plaintiff states he did not refuse to answer any questions but interpreted Taylor's comments as statements rather than formal questions. (ECF No. 1 at 25-32) (Exhibit 3 of Complaint.)

4

13. At 1:00 p.m. on June 18, 2019, Defendant Taylor sent an email to Deputy Commander Magana stating that Plaintiff "would not provide a statement or any information about [the incident report] Counselor Graves had wrote." (Exhibit 10, Emails between Taylor and Magana.) Shortly thereafter, Deputy Commander Mike Magana instructed Defendant Taylor to issue Plaintiff a disciplinary report for impeding an investigation. (*Id.*)

14. On June 19, 2019, Defendant Taylor issued a disciplinary report to Plaintiff for impeding or interfering with an investigation and giving false information to an employee. (ECF No. 1 at 14) (Disciplinary Report of June 19, 2019).

15. On June 24, 2019, Plaintiff appeared before the Adjustment Committee. That day, the Committee voted to expunge the disciplinary report.

16. On June 27, 2019, Sherwin Miles, as Acting Warden, concurred with the expungement.

17. Plaintiff never served or faced a single deprivation as a result of the June 19 disciplinary report, other than simply appearing before the Adjustment Committee, telling his side of a story, and leaving.

18. On August 21, 2019, Plaintiff transferred from Stateville Correctional Center to Hill Correctional Center. (Exhibit 11, Movement History.)

**Procedural History**

19. On July 14, 2021, Plaintiff commenced this lawsuit by filing his original complaint, alleging two counts: (1) one for First Amendment retaliation because of the disciplinary report from June 19, 2019; and (2) civil conspiracy, alleging without any facts that Defendant Taylor was in "cohorts" with others. (ECF No. 1.) This Court screened the complaint, concluding that Plaintiff sufficiently alleged a plausible retaliation claim. However, the Court found no basis for a conspiracy claim, noting that the allegations show

5

that Graves (the only other individual alleged in Plaintiff's complaint at the time) acted on the information Plaintiff himself provided, and that the Adjustment Committee ruled in Plaintiff's favor; thus, there was no plausible allegation of conspiracy, and count II was dismissed. (Screening Order, ECF No. 7.)

20. Thereafter, Defendant Taylor appeared, answered, and participated in discovery. Discovery has since closed under the supervision of Magistrate Judge Cole and the cause was referred back to this Court for dispositive motion practice.

21. On April 8, 2024, this Court recruited volunteer, *pro bono* counsel for Plaintiff so that some sensitive discovery documents could be discussed between Plaintiff and his counsel.

22. On August 27, 2024, Plaintiff filed a Motion for Leave to File Amended Complaint. The proposed amended complaint does the following:

    a. adds three new party defendants relating to the events from five years ago;

    b. "clarifies" Plaintiff's existing First Amendment retaliation claim;

    c. adds an Eighth Amendment deliberate indifference claim;

    d. adds a section 1983 conspiracy claim against all Defendants; and

    e. adds a prayer for injunctive relief.

## Argument

23. Plaintiff's Motion for Leave to Amend should be denied as it (1) is facially barred by the statute of limitations, (2) is otherwise untimely, (3) lacks any plausible factual basis for the new claims under Rule 8, and (4) attempts to plead injunctive relief that is not available as such relief is moot under Article III of the U.S. Constitution. While it is true that courts generally allow amendments liberally, such amendments are typically permitted early in litigation, before dispositive motion practice, and when they present plausible allegations.

6

Instead, Plaintiff offers a convoluted conspiracy theory involving correctional staff allegedly targeting him, yet no adverse action occurred against him. Accordingly, Plaintiff's motion must be denied.

24. In pertinent part, Rule 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court "may deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." P*erkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991). For example, if there is "futility of amendment," then the district court should not "freely give leave," because it is unjust to permit an amendment that contains obvious deficiencies. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### A. Facial Violation of Statute of Limitations as to proposed new Defendants.

25. First, the proposed amended complaint facially violates the two-year statute of limitations, which applies to section 1983 claims in this District. Plaintiff's complaint is focused on what allegedly happened at Stateville Correctional Center in June 2019. Plaintiff was transferred to another facility in August 2019, and he filed his original complaint solely against Xavier Taylor in July 2021. (ECF No. 1.) His claims against any new defendants are therefore time-barred unless the amended pleading relates back to the original complaint, pursuant to Rule of Civil Procedure 15.

26. Plaintiff's amended complaint would not relate back under Rule 15. An amended complaint relates back in only three circumstances: (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a **claim** or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—

7

in the original pleading; (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment. Fed. R. Civ. P. 15(c)(1)(A)-(C). The central inquiry under Rule 15(c) is whether the original complaint "gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 741 (7th Cir. 2018).

27. Here, neither (A) nor (C) apply because no law provides the applicable statute of limitations in Illinois to relate back in this instance, and Plaintiff is not changing a party or the name of a party. However, (B) does not apply either because Plaintiff is attempting to add parties, not just claims, to his case. The new defendants would have had no notice whatsoever that they would be named defendants. As to Darwin Williams, Plaintiff would have known that Sherwin Miles's designee had signed the June 5, 2019, statement showing that Plaintiff's grievance was not an emergency. Further, Plaintiff has known since at least July 7, 2022, about Deputy Commander Michael Magana's alleged involvement in this "conspiracy" Plaintiff attributed to him. (See ECF No. 46 at 2) (Plaintiff indicating in filing of 12/30/22 of Mike Magana's involvement).

28. Accordingly, Plaintiff's Motion must be denied because, as to Mike Magana, Darwin Williams, and the "John Doe," the new complaint would not relate back for statute-of-limitations purposes.

### B. Plaintiff's Motion is otherwise untimely from undue delay.

29. Even if the amended complaint relates back to July 2021, the Motion is otherwise untimely because of the substantial delay the amendment would cause to the progress of this

8

case. Undue delay alone may not be sufficient to deny leave to amend a complaint, but "the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar the filing." *Doherty v. Davy Songer, Inc.*, 195 F.3d 919, 927 n.5 (7th Cir. 1999) (collecting cases).

30. Here, the referral for discovery before the magistrate has terminated, discovery has closed, and more than five years have passed after the alleged events for which Plaintiff brings suit. Of those five years, Plaintiff has known for at least two of them that he could attempt to amend his complaint to add Michael Magana as a defendant. Indeed, Plaintiff being the experienced litigant he is likely knew long ago that the June 5, 2019, emergency-grievance signature was not Sherwin Miles's, but instead was an assistant warden like Darwin Williams. Rather than bringing these issues to the Court's attention for timely resolution, he waited. Allowing the amendment would reopen discovery for the new Defendants—each of whom are entitled to pursue it—reopen the issue of exhaustion of administrative remedies, and further delay trial of a case where the only compensatory damage available to Plaintiff is one dollar. 42 U.S.C. § 1997e(e); *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) ("absent a showing of physical injury, § 1997e(e) would bar a prisoner's recovery of compensatory damages for mental and emotional injury."); *Searles v. Van Bebber*, 251 F.3d 869, 879-81 (10th Cir. 2001) (nominal and punitive damages for First Amendment violation not barred). Plaintiff's Motion must be denied for this undue and wasteful delay for a case where no objective injury (including any First Amendment deprivation for retaliation purposes) occurred to Plaintiff.

### C. Plaintiff's proposed new claims are not plausible.

31. Plaintiff attempts to add a First Amendment claim against Deputy Commander Michael Magana, an Eighth Amendment claim against Darwin Williams for deliberate

9

indifference, and a "conspiracy" claim against Magana, Williams, and Taylor. None of the proposed claim is supported by plausible inferences.

32. First, Plaintiff attempts to state a First Amendment retaliation claim. "To state a First Amendment claim for retaliation, a plaintiff must allege that '(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action.'" Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015). The "deprivation" is evaluated on an objective basis, where courts ask "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). "Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal, we can resolve the issue as a matter of law." *Douglas v. Reeves*, 964 F.3d 643, 647 (7th Cir. 2020). *See also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . .").

33. Here, Plaintiff's only alleged 'deprivation' was trivial. Plaintiff received a disciplinary ticket, where he noted in his original complaint that he was not forthcoming with Defendant Taylor, attended an adjustment committee hearing, and the committee promptly expunged the report. While this Court found these allegations sufficient at the screening stage when Plaintiff was proceeding *pro se*, the standard should now be higher since Plaintiff is represented by counsel. A similar lenient interpretation is no longer warranted.

34. Second, Plaintiff's Eighth Amendment count against Darwin Williams does not assert a plausible claim for deliberate indifference. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*

10

*v. Brennan*, 511 U.S. 825, 828 (1994). Thus, Rule 8, Plaintiff must plausibly allege that there was an objective and substantial risk of serious injury, along with the subjective awareness of that same risk by the defendants.

35. Here, Plaintiff's allegations against Darwin Williams are limited to the claim that Williams signed Sherwin Miles's name on June 5, 2019, in response to Plaintiff's May 28, 2019, grievance. In that grievance, Plaintiff complained that unspecified IDOC staff were retaliating against him for unspecified reasons. (Exhibit 1, Grievance and IDOC Response.) The grievance focused on issues with his cell conditions, including high water pressure, which disrupted his sleep. Plaintiff claimed these problems had persisted since at least May 10, 2019. In his grievance, Plaintiff vaguely mentioned that, beginning on April 21, 2019, he believed Internal Affairs had retaliated against him and expressed concern about potential future retaliation. However, Plaintiff did not provide any details regarding the nature of the alleged retaliation, who was responsible, or why he believed the actions were retaliatory. The only specific allegation related to Internal Affairs was his claim that unnamed staff were 'maliciously and wantonly' violating Administrative Directive 05.08.105, which concerns the 'Renunciation of Affiliation with Security Threat Groups.' (Exhibit 2 at 9, Table of Contents of IDOC Directives.)

36. The May 28 grievance simply does not provide a plausible basis for a First Amendment retaliation claim against Williams. Plaintiff's claim is that Williams, acting under color of state law, violated his Eighth Amendment rights by being deliberately indifferent to the risk of retaliation and harm outlined in the grievance. The grievance alleged that Plaintiff faced potential retaliation from gang members due to the malicious disclosure of his participation in the Security Threat Group Renunciation Process. However, Plaintiff's allegations fail to establish that Williams had actual knowledge of a substantial risk of harm, as the grievance lacks sufficient detail to demonstrate such awareness.

11

37. Third, Plaintiff's claim of conspiracy similarly is not supported by plausible allegations. To state a claim for conspiracy under § 1983, Plaintiff must allege facts from which it can be reasonably inferred that there was (1) an express or implied agreement among defendants to deprive the plaintiff of his constitutional rights, and (2) overt acts in furtherance actually deprive him of those rights. *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018).

38. Here, the conspiracy claim is fatally deficient under Rule 8's plausibility standard. Plaintiff offers no specific facts suggesting an agreement between defendants or concrete actions furthering a conspiracy with any discernible goal. Instead, the claim rests on speculation and conclusory statements. The alleged information sharing—primarily the forwarding of Graves' incident report, which did not even mention Taylor—reflects routine prison administration, not conspiracy. Plaintiff's assertion of a facility-wide conspiracy involving correctional staff as gang members is wholly unsupported beyond his own say-so. The timeline of events, including the prompt expungement of the disciplinary report, contradicts any plausible inference of coordinated malicious action. Importantly, Plaintiff fails to allege <u>any</u> significant adverse action resulting from this purported conspiracy, undermining its very premise. The discrete actions of Williams, the John Doe printer email, and Magana do not, individually or collectively, suggest a larger conspiracy when viewed objectively. Absent concrete allegations of an agreement, coordinated action, and a common unlawful purpose, this claim amounts to mere conjecture and should be summarily rejected.

### D. Plaintiff's prayer for relief impermissibly seeks injunctive relief.

39. Plaintiff's request for injunctive relief is moot and should be similarly rejected. Under Article III of the Constitution, federal courts can only adjudicate actual, ongoing controversies. Plaintiff is no longer housed at Stateville Correctional Center, where the

alleged events occurred, and has not demonstrated a realistic possibility of being transferred back there. Courts have consistently held that a prisoner's request for injunctive relief becomes moot upon transfer to another facility unless they can show a likelihood of retransfer. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996); *See also Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988). "Federal courts are not in the business of enjoining prison policies if the inmate isn't in that prison." *Kyles v. Beaugard*, No. 15-cv-8895, 2023 U.S. Dist. LEXIS 19328, at *10 (N.D. Ill. Feb. 6, 2023).

40. Furthermore, injunctive relief is only permissible against state officials when there is an ongoing violation of federal law. As Plaintiff is now at a different facility and has not alleged any ongoing violations attributable to any proposed defendant (or Xavier Taylor), there is no continuing violation to remedy. The Prison Litigation Reform Act (PLRA) also limits the court's authority to grant injunctive relief in a prisoner case like Plaintiff's, requiring it to be narrowly drawn and extend no further than necessary to correct the violation.

41. Given that Plaintiff is no longer subject to the conditions at Stateville and has not plausibly alleged he will be returned there, any injunctive relief would be purely speculative and advisory, falling outside the court's constitutional authority. Therefore, if the amended complaint is allowed, the request for injunctive relief should be struck.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

By: /Daniel N. Robbin/
Daniel Noah Robbin
Assistant Unit Supervisor
Government Representation Division
Office of the Attorney General
115 S. La Salle St.
Chicago, 60603

13

(312) 814-7199
daniel.robbin@ilag.gov